8    361
29    127

## Jule Maner *v.* The State.

1. False Imprisonment. — The *gravamen* of this offence consists in the wilful detention of another against his consent, and where it is not expressly authorized by law.    The indictment or information should allege the mode in which the detention was effected, — as, by actual violence, assault, threats, or the like, — but need not further particularize it.

2. Same. — If the detention was effected by threats, it need not be alleged that they were seriously made, or of such a character as to operate on the person threatened, or to inspire him with a just fear of injury to his person, reputation, or property ; but the State is confined to the kind of detention

alleged, and proof of a detention by assault will not support an allegation of detention by threats.

3. Same. — If, however, threats be the mode alleged, it is not necessary to prove express verbal threats; they may consist of acts, gestures, or the like.

4. Practice. — That the court below excused certain jurors for insufficient cause is not material error, when it is not shown that the defendant was prejudiced thereby.

5. Evidence. — At the separate trial of one of several defendants jointly charged with false imprisonment, the State was allowed, over objection, to prove a conversation and incidents which, in the presence of the defendant on trial, transpired between his alleged confederates and a witness in regard to the detention, and which tended to corroborate the principal State's witness. *Held*, that the proof was properly admitted.

Appeal from the County Court of Fort Bend. Tried below before the Hon. J. C. Williams, County Judge.

C. Davis, Z. Bailey, and the appellant were jointly charged by information with the false imprisonment of Ferris Pharr, by threats, for one hour, on May 12, 1877.

Ferris Pharr, it appears, lived with his brother Walter, and early on the day alleged, Davis, Bailey, and the appellant came together to Walter Pharr's and inquired for Ferris Pharr. Being informed in what direction he had gone, they went in search of and found him in the woods. According to Ferris Pharr's testimony, Davis stopped him and produced a written instrument, and in an angry and menacing manner required him to sign it. On request, Davis read it to witness, who understood it to be " a libel" (lie-bill), or document denying certain statements made by him, on one Baker's authority, to the effect that Davis and the appellant slaughtered other people's cattle. Witness requested them to go with him to his brother's, to whom he wished to show the paper before signing it; but Davis refused to do so, and in a peremptory and threatening manner, though without verbal threats, demanded of witness to sign it then and there, and produced a pen and ink for the purpose. Witness thought he saw the shape of a pistol

under Davis's clothes, and being outnumbered, unarmed, and apprehensive of injury, he signed the paper. Witness was detained by them for about an hour, and was prevented from proceeding to his brother's, as he desired to do. After the paper was signed, they and the witness proceeded towards his brother's, but before reaching there the three defendants turned in a somewhat different course. Witness went to his brother's, and told him immediately what had occurred.

Walter Pharr, testifying for the State, said that on hearing from his brother what had taken place, he immediately went in pursuit of the three defendants, and in about a mile overtook them. He asked Davis to let him see the paper his brother had signed. Davis refused to do so until witness promised to return it, and then Davis told the appellant to let witness see it. The appellant pulled a paper out of his pocket and handed it to witness, who saw that it was the document signed by his brother, and, after reading it, told Davis that if he (witness) had been present, his brother would not have signed it, and that an advantage had been taken of his brother. Davis replied that he intended that Ferris Pharr should sign it, and, if necessary, would have collared him and made him sign it, and that somebody would have been killed or the paper signed. The appellant was present, and heard all that passed between witness and Davis, and occasionally spoke himself. They did not deny having forced Ferris Pharr to sign the paper, and refused to give it up to witness. To this testimony the defence excepted.

J. Bates, for the State, testified that the appellant showed him the document in question, and said that he was present when Davis had Ferris Pharr to sign it.

Z. Bailey, for the defence, gave his version of the interview between him, Davis, the appellant, and Ferris Pharr, when the paper was signed. It differed in all material details from the account given of it by Pharr, who, according

to this witness, was not stopped or detained in any manner, nor menaced in any way; but who, after having the document twice read to him, dismounted from his horse and signed it without objection. This witness, it appears, had been already tried and acquitted, and was thus qualified to testify in the present case. The appellant was less fortunate. The jury found him guilty, and assessed his punishment at a fine of $250 and an hour in the county jail.

*P. E. Peareson,* for the appellant.

*Thomas Ball,* Assistant Attorney-General, for the State.

CLARK, J. An indictment or information for false imprisonment by means of threats need not aver that the threat was seriously made, or was of such a character as to operate on the person threatened, or to inspire a just fear of injury to his person, reputation, or property. The *gravamen* of the charge is the wilful detention of another against his consent and where it is not expressly authorized by law; and while the mode or manner of effecting the detention should be stated, it is sufficient, under our system, to set it forth in the language of the statute, — as by actual violence, by assault, or the like, — without particularizing the ingredients of an assault or the actual violence. The character of the assault or the threat are matters of proof, and not of pleading. The State is, of course, confined to the particular mode of detention alleged, and proof of detention by assault will not support an allegation of detention by threats. Nor, under the latter allegation, is it necessary to prove express verbal threats, but these may consist of acts, gestures, or the like, which, equally with words, may be calculated to operate upon the person threatened, and inspire a just fear of some injury to his person, reputation, or property. *Herring* v. *The State,* 3 Texas Ct. App. 108.

The objection that counsel for the State was permitted to

excuse jurors for cause, because they had served for one week in the District Court, or for three days in the County Court, within six months before the trial of this case, is so loosely set out in the bill of exceptions that we are not able to say whether the proceeding was error or not. It is certainly not made to appear that appellant was prejudiced thereby in any manner, and in the absence of such a showing this court is not authorized to revise the action of the court below in the particular mentioned. If appellant desired a revision, he should have presented the matter in such definite shape that this court would be enabled to see how he might have been injured by the proceeding. As presented, the presumption is that the action of the court was at best but an irregularity, resulting in no particular injury to either the defendant or the State.

The evidence admitted over the objection of appellant was competent as corroboratory of the main witness for the prosecution, and its admissibility was sanctioned by established principles of evidence. The conversation and statements between Davis and the witness Walter Pharr, immediately after the perpetration of the offence, were in the presence of the defendant and the other actors, and, like the testimony of Bates and the declaration to Walter Pharr by the injured party immediately after his escape, were most convincing as to the entire truth of the evidence of Ferris Pharr, the injured party.

There is no error in the record of which appellant can complain, and the judgment is affirmed.

*Affirmed.*